UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **WURTH USA, INC.,**<br><br>                              **Plaintiff,**<br><br>**v.**<br><br>**JAMES MATLOCK; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and DOE ENTITIES 1-10,**<br><br>                              **Defendants.** | **Case No.:  6:22-cv-127** |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Wurth USA, Inc. ("Wurth"), by its undersigned counsel, Gordon Rees Scully Mansukhani, LLP hereby alleges against Defendant James Matlock ("Matlock") as follows:

## PRELIMINARY STATEMENT

Defendant Matlock is a former employee of Wurth who violated his valid and enforceable Wurth Employment Agreement by commencing employment with Winzer Corporation ("Winzer"), Wurth's direct competitor, and selling Winzer's products to his former Wurth customers, within narrow-restricted temporal and geographic boundaries, located in the same territory as his former Wurth assigned territories shortly after his separation from Wurth. Winzer, who is not named as a defendant at this early juncture, for its part, is aware of Matlock's iron-clad Employment Agreement and more specifically, his non-compete agreement, but has turned a blind eye in order to obtain an unfair competitive advantage and access to Matlock's knowledge of Wurth's confidential and trade secret information. Matlock continues to use

Wurth's confidential and proprietary customer information in violation of both statute and the Wurth Employment Agreement.   Wurth has been forced to file this instant action to protect its confidential and proprietary information, and to enforce its valid and enforceable Employment Agreement that Matlock signed, but refuses to honor.

## PARTIES

1.      Plaintiff Wurth is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business located at 93 Grant Street, Ramsey, New Jersey 07446.

2.      Defendant Matlock is an adult individual and was formerly employed by Plaintiff. Upon information and belief, Matlock is a resident of Texas, residing at 9129 Eddy Water Circle, Tyler, Texas 75703.

## JURISDICTION AND VENUE

3.      The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) in that there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs of suit.

4.      This Court has jurisdiction over Defendant as he resides in the State of Texas, has done business within this State and in this District, and Plaintiff's claims in this action arose out of those contacts. Additionally, Defendant knowingly and voluntarily executed an employment agreement with Plaintiff to conduct business within this state.

5.      Venue is proper in this Court because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

### The Business of Wurth and Winzer

6.      Established in 1969, Wurth is one of the leading suppliers in the United States, and around the world, of high-quality hardware products and services, including electrical and chemical. Specifically, Wurth specializes in the, sale, service and retail of automotive parts and chemicals, automotive hand tools, electrical supplies, cargo parts and chemicals, key machine, key blank, products. Wurth additionally has its own line of Automotive chemicals, known as the WURTH Green Line.

7.      Wurth maintains offices shops throughout the United States and has been expanding its presence for over 50 years.

8.      Wurth has multiple divisions within its company, including its Sales Division which is compiled of full time Sales Representatives, each assigned to a specific territory, in one or more states.

9.      Winzer, a direct competitor of Wurth, is also in the fasteners, electrical, chemical automotive, hand tool industrial supply and services industry. Winzer has its presence throughout the nation, including in Florida, Georgia, Washington D.C., and Texas. According to Winzer's website, "Winzer is your single source supplier for all of your maintenance and repair supplies[1]." Winzer has been servicing the maintenance, repair, and operations industry since 1978. *Id.*

### Matlock's Employment at Wurth and His Employment Agreement

10.      Wurth hired Matlock as a Sales Representatives in Wurth's Sales Division team. In his position, Matlock was assigned to a specific territory and was responsible to solicit customers and maintain a class of accounts in his territory, pursuant to Wurth's customers' or

---

[1] https://www.winzer.com/about-us

accounts' orders for any automotive related parts, key machine related parts, industrial fasteners and industrial maintenance related products.

11.     Matlock maintained his position at Wurth for at least ten years.

12.     During that time, Matlock was exposed to, had access to, and utilized Wurth's Trade Secrets and Confidential Information such as Wurth's specialized products and equipment; identity of Customers including Customer Lists; sales pricing; specialized requirements of Wurth's customers; commission structures; Wurth's periodic financial performance; marketing, strategy, and sales reports; Wurth's software and computer programs; training materials and others. From the first date of employment through last day of employment, Matlock gained considerable knowledge and expertise due to such confidential material and training provided by Wurth.

13.     At the time of his separation, Matlock was employed by Wurth as a Sales Representative in the very original territories as initially assigned, and had built reputable steady relationships with customers.

14.     As a Sales Representative, Matlock worked closely with his counterparts in other regions to advance Wurth's overall business strategy.

15.     For example, Matlock and other Wurth representatives frequently attended conference calls with their superiors in which they discussed business developments within their respective territories. These calls included Conference Calls; Strategic Account Calls, in which superiors shared confidential information and statistics about Wurth's customers in their respective regions, as well as information regarding new customers that Wurth intended to pursue.

16.     As another example, Wurth's superiors routinely shared order records, internal organizational charts, leads spreadsheets, and other confidential documents related to Wurth's

business strategy and its market intelligence with their Sales Representatives. Defendant frequently attended various in-person meetings in which such information was shared and discussed.

17.     Matlock also frequently consulted with colleagues in Wurth's various locations on a less formal basis.  Matlock, in fact, had spent most of his professional career with Wurth.

18.     As a consequence, Matlock was intimately familiar with Wurth's business strategy within his assigned territories, including but not limited to Wurth's customers and customer preferences and relationships; agreements and pricing; business initiatives; competitive advantages and disadvantages; and approaches to new markets and customers.

19.     Incident to and in consideration of his employment with Wurth, Matlock entered into an employment agreement with Wurth which is attached hereto as **Exhibit A** ("Matlock Employment Agreement").

20.     By entering into the Employment Agreement, Matlock agreed not to disclose or misuse confidential Wurth information. Specifically, he promised that he would not, at any time during or following his employment:

> …remove from Company's office any of the Company's Confidential Information, or any copies of such documents or information, without the written permission of Company's president.

*See* **Exh. A** § 5(a).

21.     Further, Matlock agreed not to use:

> …such confidential information for any non-Company purposes whatsoever or to divulge such information to any person other than Company or persons to whom Company has given its prior written consent.

*See* **Exh. A** § 5(b).

22.     In accepting his position with Wurth, Matlock specifically agreed to refrain from soliciting certain Wurth customers for a period of twelve (12) months after leaving Wurth's employ. His Employment Agreement provides:

> For a period of twelve (12) months after this Agreement has been terminated for any reason, with or without cause, or for a period of time equal to the length of the Employee's employment with Company if such tenure is less than twelve (12) months, Employee will not directly or indirectly solicit or sell any products which are the same or similar to the Company's products to those persons, companies, firms or corporations who are or were customers of Company within the six (6) months prior to the termination of this Agreement and for whose accounts Employee was responsible while in the employ of Company. Employee agrees not to solicit such accounts on behalf of himself or any other person, firm, company, or corporation. Employee further agrees not to solicit or induce or attempt to solicit or induce employees of the Company to terminate their employment with the Company, or cause employees to take any actions that might deprive the Company of any customer or of any present or prospective opportunity.

*See* **Exh. A** § 7(a).

23.     Additionally, Matlock as a condition of and in consideration of his employment, covenanted not to compete with Wurth and other Wurth Companies within a limited geographic radius for the first year after leaving Wurth. His Wurth Employment Agreement provides:

> For a period of twelve (12) months after this Agreement has been terminated for any reason, with or without cause, or for a period of time equal to the length of Employee's employment with Company if such tenure is less than twelve (12) months, Employee will not enter into or engage in the automotive parts business, the key machine business or key blank business, the industrial fastener and industrial maintenance products business, or any branch thereof as an individual or his own account or as a partner of joint venture, or as an employee, agent, independent contractor, or salesman for any person, firm association or corporation, or as an officer or director of a corporation which competes with the business of this Company within any territory to which Employee

was assigned within six (6) months prior to the termination of this Agreement.

*See* **Exh. A** § 7(b).

24.      The reasonableness of the geographic and temporal scope of the non-competition and non-solicitation provisions in the Wurth Employment Agreement has been accepted and the restrictions enforced by state and federal courts.

25.      Matlock agreed to the reasonableness of the geographic and temporal scope of the non-competition and non-solicitation provisions which provides:

> The parties have attempted to limit Employee's right to compete only to the extent necessary to protect Company from unfair competition. The parties recognize, however, that reasonable people may differ in making such a determination. Consequently, the parties hereby agree that, if the scope of enforceability of the restrictive covenant is in any way disputed at any time, a court or other trier of fact may modify and enforce the covenant to the extent that it believes to be reasonable under the circumstances existing at that time.

*See* **Exh. A** § 7(c).

26.      Matlock initialed each page of his Wurth Employment Agreement.

27.      Matlock also signed his Wurth Employment Agreement.

28.      Furthermore, Matlock expressly agreed that in the event of a breach in the Wurth Employment Agreement pursuant to the misuse of trade secrets, confidential information, unauthorized employee communication, misuse of company name and non-disparagement and violation of the restrictive covenants, such breach will irreparably and continually damage Wurth, for which money damages may not be adequate. Matlock agreed that:

> In the event that he breaches or threatens to breach any of these covenants, Company shall be entitled to (1) a preliminary or permanent injunction without bond in order to prevent the

continuation of such harm; (2) the courts extension of the duration of the restrictive covenants for the period in which Employee was found to be in breach of those covenants; and (3) money damages for prior breaches insofar as they can be determined. Nothing in this Agreement, however, shall be construed to prohibit Company from also pursuing any other remedy, the parties having agreed that all remedies shall be cumulative.

As a portion of the above referenced money damages for the period of time during which Employee violates these covenants, Company shall be entitled to recover the amount of fees, compensation, or other remuneration earned by Employee as a result of any such breach.

*See* **Exh. A** § 8(a)-(b).

### Matlock's Employment History at Wurth

29.     Defendant Matlock was a Sales Representative in Wurth's Sales Division team. Defendant Matlock was hired as a Sales Representative in Wurth's Sales Division team and signed his Wurth Employment Agreement on January 2, 2008. **Exhibit A**.

30.     Defendant Matlock was assigned to multiple territories in Texas. Such territories include but are not limited to: Anderson County; Angelina County; Camp County; Cass County; Cherokee County; Franklin County; Gregg County; Harrison County; Henderson County; Hopkins County; Houston County; Hunt County; Kaufman County; Rouk County; and Smith County. Matlock had access to and utilization of Wurth's trade secrets and confidential information.

31.     Over the length of employment with Wurth, Defendant Matlock, built many relationships with Customers and conquered massive expertise in the field and knowledge of his territories.

32.     A mere weeks prior to his departure with Wurth, Defendant Matlock requested confidential customer lists and information and kept same – a move that is in direct violation of his Wurth Employment Agreement. *See* **Exh. A** § 5(a)-(b).

33.     After nearly 14 years at Wurth, Defendant Matlock left Wurth and began new employment.  Upon information and belief, Matlock operates under his own business entity which is part of Winzer, a direct competitor of Wurth. Not only did Defendant Matlock become an employee of a direct competitor, he also remained in the very same territories in violation of his Wurth Employment Agreement. *See* **Exh. A** § 7(b).

34.     During the onset of his new employment in his own business, and as a new employee of Winzer, Defendant Matlock successfully solicited current and former customers of Wurth and successfully sold to them various supplies for the benefit of himself and Winzer, in direct violation of his Wurth Employment Agreement. *See* **Exh. A** § 7(a).

35.     To date, it has been confirmed and verified that Defendant Matlock is actively recruiting and encouraging current Wurth Employees to terminate with Wurth and begin new Employment with Winzer.  Defendant Matlock is specifically targeting Wurth Employees who are known to add extreme value to Wurth, both monetarily and ethically. Such behavior is in direct violation of his Wurth Employment Agreement. *See* **Exh. A** § 7(a).

36.     Wurth has in fact been damaged at minimum, in an amount exceeding a hundred thousand dollars by Matlock.

**Matlock's Development of Wurth's Goodwill and Customer
Relationships, and His Access to Wurth's Trade Secrets,
Including Its Confidential Customer List**

37.     In order to perform their duties, Matlock received training by Wurth and was given access to, and did in fact access, Wurth's confidential and proprietary information. Matlock also became intimately involved with many of Wurth's customers, accounts, and projects.

38.     Specifically, Matlock had access to and contributed to, the substantial customer list which Wurth has developed and which contains critical information for hundreds of prospective and actual customers in the Texas region (i.e., customers seeking or potentially seeking, among others, industrial automotive supplies) (the "Wurth Customer List"). The Wurth Customer List, which has been developed over many years and at great expense, contains confidential and proprietary business information, such as but not limited to:

   a.    The names, addresses, and telephone numbers of each Wurth customer/-account and prospective customer/account;

   b.    The name, title, telephone number, email address of the contact person for each Wurth customer/account and prospective customer/account;

   c.    The name, title, address, email address, telephone number of each decision maker in every department of each Wurth customer/account and many prospective customers/accounts;

   d.    The particular requirements and preferences of each customer/account and many prospective customers/accounts;

   e.    The pay rates or fees negotiated with each customer/account;

   f.    Credit information for each customer/account and many prospective customers/accounts; and

   g.    Other information pertinent to serving each customer/account and prospective customer/account.

39.     All Wurth Sales Representatives, including Matlock, had access to and utilized the Wurth Customer List.

40.    Additionally, over the years, Wurth has developed business relationships and goodwill with numerous Customers and accounts, and Wurth's Sales Representatives have access to those relationships all throughout the United States.

41.    Indeed, Wurth employed Matlock and compensated him specifically so that he would focus her efforts on developing those relationships, thereby contributing to the goodwill of the company.

42.    Wurth's Customer List is an extremely valuable asset and has been compiled only after spending significant time, efforts and resources. The information compiled in this list is generally not known or readily ascertainable and, as such, could easily be exploited by Wurth's competitors to allow them to gain a competitive advantage over Wurth.

43.    Matlock did not bring any customer relationships or contacts to Wurth; rather, he was provided a territory with built-in customer relationships, which he was required to develop and maintain as a Wurth employee.

44.    To protect the information contained in this list, as well as Wurth's Customer relationships, Wurth has adopted company-wide written policies restricting the disclosure or use of this information other than for official company purposes, as evidenced in each of the Matlock's Employment Agreement. *See* **Exh. A** § 5(a)-(b).

45.    Additionally, Wurth requires each of its Sales Representatives to execute employment agreements and other documents with strict confidentiality provisions as a condition of employment. Further, Wurth restricts and limits who can access, use, and print such confidential information; and requires express written authorization for any non-Company purposes. *Id.*

46.     In addition, and as described above, Defendant Matlock had access to high-level confidential information concerning Wurth's business practices and strategies throughout their territories, by virtue of his role as Sales Representative.

47.     It goes without saying, the industry of which Wurth is in, is highly competitive. Thus, the type of confidential information that Matlock continues to have is critical to Wurth's business.

48.     Also critical are customer goodwill, which Wurth pays its Sales representatives to develop on behalf of Wurth so that when customers are in need for supplies and services, customers rely on Wurth for delivery and great customer service.

49.     Wurth spends hours and hours developing these relationships, largely through the activities of its Sales Division teams. Matlock has demonstrated the value of such relationships already by, upon information and belief, actively reaching out to the customers with whom he worked with while at Wurth since separating from Wurth and beginning employment with Winzer.

50.     Matlock knew that Wurth specifically identified the information set forth above as confidential proprietary information; that such information has not been published or otherwise become a matter of public knowledge; and that he was not and continues to be obligated to use it, if at all, exclusively for the benefit of Wurth, but otherwise to keep it strictly confidential.

51.     Matlock knew that disclosing Wurth's trade secrets, confidential and proprietary information would operate to the detriment of Wurth and to the commercial advantage of its competitors, particularly a competitor like Winzer.

**Matlock's Separation from Wurth
to Join Wurth's Direct Competitor Winzer**

52.     In 2021, Defendant Matlock separated from Wurth to join Wurth's direct competitor, Winzer. Specifically, Defendant Matlock resigned from Wurth effective July 21, 2021.

53.     Matlock began employment with Winzer shortly after his separation.

54.     Defendant Matlock was required to honor his multiple post-employment restrictive covenants. Upon new employment, one particular post-employment restrictive covenant in the Matlock Employment Agreement is to show prospective employers, Wurth's Employment Agreement. Specifically, the Employment Agreement provides:

> Employee agrees to promptly furnish any new employer with a copy of this Agreement prior to commencement of employment with that employer if less than two years after the termination of Employee's employment with Wurth.

*See* **Exh. A** § 11.

55.     Upon information and belief, Defendant Matlock is now employed as Winzer's Sales Representative. His new employment violates his Wurth Employment Agreement because, *inter alia*, the territories to which he is assigned by Winzer are within the territories of which he was assigned while employed by Wurth.

56.     Prior to his departure from Wurth and upon effective employment with Winzer, Defendant Matlock obtained paper copies of confidential Wurth Customer Lists and material, and successfully solicited same, in direct violation of his Wurth Employment Agreement.

57.     As Winzer's Sales Representative in his assigned territories, Defendant Matlock is in a position to utilize and capitalize his knowledge of Wurth's confidential and trade secret information in territories including, but not limited to: Anderson County; Angelina County;

Camp County; Cass County; Cherokee County; Franklin County; Gregg County; Harrison County; Henderson County; Hopkins County; Houston County; Hunt County; Kaufman County; Rusk County; and Smith County, which he obtained by virtue of his position as a Sales Representative for over 13 years — to unfairly compete against Wurth to its detriment and to the benefit of himself and Winzer.

58.     Upon information and belief, Winzer is directly competing with Wurth in Texas, in the very same territory counties which Defendant Matlock had significant insight and control over.

59.     Upon information and belief, Winzer also expected that Defendant Matlock would encourage other Wurth Sale Representatives to transition to the Winzer company, in violation of his Wurth Employment Agreement.

60.     To date, Defendant Matlock has actively attempted to recruit and is actively recruiting and encouraging current Wurth Employees to terminate with Wurth and transition to new employment with Winzer. Disgracefully, Defendant Matlock is targeting current Wurth Employees who have an excellent reputation for high quality of customer service, excellent work ethic, and who continue to provide high monetary returns; in other words, Wurth Employees who are considered of most valuable assets to Wurth.

61.     Upon information and belief, Winzer hired Defendant Matlock not only to have him compete with Wurth in Texas (which is, in itself, in violation of Defendant Matlock's Wurth Employment Agreement), but also in order to utilize the Wurth goodwill, and confidential and proprietary information Matlock learned while employed by Wurth to compete against it while expanding to other locations.

### Cease-and-Desist Exchange and Thereafter

62.     On or around July 27, 2021 Wurth sent a Cease-and-Desist letter to Defendant Matlock regarding his new Winzer employment and a reminder of his valid and enforceable restrictive covenants contained in his Wurth Employment Agreement. Such Cease-and-Desist letter requested Matlock to honor his post-employment restrictive covenants. **Exhibit B.**

63.     On September, 1, 2021, Wurth through counsel, sent a Cease-and-Desist letter to Winzer and demanded Winzer among others, to immediately refrain from tortiously interfering with Wurth's agreements with its employees and that it cease and desist any efforts to solicit, engage or poach current or former Wurth employees to join Winzer. **Exhibit C**.

64.     On September 7, 2021, Winzer through counsel, responded to Wurth's Cease-and-Desist letter denying all allegations. **Exhibit D**.

65.     On or about November 9, 2021, Wurth filed a Verified Complaint in the District of New Jersey, Civil Action No. 2:21-cv-19877 against Matlock and three other former Wurth employees who also violated their Employment Agreements with Wurth.

66.     On November 15, 2021, Wurth filed an Order to Show Cause seeking temporary and permanent relief as a result of Matlock's failure to abide by his Employment Agreement.

67.     Shortly thereafter, Matlock filed a motion to dismiss for lack of jurisdiction which was administratively dismissed as the parties engaged in settlement discussions from December 2021 through March 2022, to no avail.

68.     Wurth voluntarily dismissed its Complaint and filed the instant lawsuit in Matlock's home state and where he continues to compete with Wurth.

69.     To date, Matlock is in active employment with Winzer and Winzer failed to take action or to cooperate, thereby continuing to utilize Wurth's trade secrets and confidential and propriety information through Matlock; continuing to solicit Wurth's customers and accounts through Matlock; and continuing to usurp Wurth's business opportunities with loyal customers/accounts and prospective customers/accounts through Matlock.

70.     To date, Wurth's damages arising out of Matlock's unlawful behavior are significant.

71.     Winzer directly competes with Wurth by selling and providing, "[f]rom fastener products to facility maintenance[2]" among others, in the greater Texas area, the very same business in which Wurth engages and the very same territories that Wurth serves.

72.     Winzer sought Matlock for hire to capitalize on his knowledge and relationship with Wurth's Customers, and his knowledge of Wurth's confidential and proprietary information.

73.     In other words, Winzer and Matlock want to take for themselves, and profit directly from, the very goodwill that Wurth paid Matlock to develop for it.

74.     Matlock has acted for the purpose of injuring Wurth and limiting marketplace competition.

75.     Upon information and belief, Winzer hired Matlock with full knowledge that he was bound by his Wurth Employment Agreement.

76.     Winzer has continued to employ Matlock with full knowledge that he was bound by his Wurth Employment Agreement. Winzer is familiar with the terms of the Wurth Employment Agreement prohibiting Matlock from disclosing, furnishing, or using confidential

---

[2] https://www.winzer.com/why-winzer

Wurth information; prohibiting him from working for a competitor of Wurth located within his previously assigned territories while being employed by Wurth; prohibiting him from soliciting Wurth's customers/accounts; and prohibiting him from disclosing or using on behalf of Wurth's confidential information.

77.    In commencing employment with Winzer, Matlock violated his Wurth Employment Agreement by accepting employment with a competitor of Wurth within the prohibited temporal and geographic scope.

78.    Upon information and belief, Matlock has further violated his Wurth Employment Agreement by, among other things, soliciting Wurth customers including those with whom he worked while employed by Wurth, in an attempt to have such customers cease doing business with Wurth and enter into supply, service and maintenance orders with Winzer. To date, collectively, Wurth has endured significant and substantial damages due to Defendant's unlawful behavior.

79.    Upon information and belief Winzer requires its employees to execute employment agreements with confidentiality provisions, restrictions on future employment with competitors and prohibitions on customers/accounts that are similar to the Wurth Employment Agreement which Matlock executed.

80.    In sum, Winzer itself acknowledges that the very same customers/accounts, business systems, operations, and customer lists that Wurth is now seeking to protect constitutes confidential information and trade secrets. In its response to Wurth's Cease-and-Cesist letter, Winzer acknowledged the importance of honoring post-employment restrictive covenants and noted the following:

> Winzer requires any new franchisee who is known to be subject to post-employment restrictive covenants to enter into a non-disclosure agreement ("NDA"), which requires the franchisee to represent that he or she (1) returned to their former employer all confidential and proprietary information; (2) has not and will not disclose any confidential or proprietary information to Winzer; and (3) will not be in violation of any agreement the employee has with their former employer by virtue of his or her work with Winzer.

**Exh**. D.

81.     By failing to adhere to its own policy, Winzer and Matlock's actions are intentional, willful and malicious.

82.     Matlock is causing Wurth irreparable harm and injury, including without limitation, the loss of customers; loss of employees; profits; business reputation and market share; the disclosure and misuse of trade secrets; disclosure and misuse of confidential and proprietary business information; and the loss of goodwill. These losses and injuries will continue if the Court does not enjoin Defendant's actions.

83.     Wurth has no adequate remedy at law.

## COUNT I — BREACH OF CONTRACT/ BREACH OF EMPLOYMENT AGREEMENT

84.     Wurth incorporates herein by reference the allegations of the preceding paragraphs.

85.     The Wurth Employment Agreement is a valid and enforceable contract.

86.     Defendant Matlock voluntarily entered into the Wurth Employment Agreement in consideration for his employment with Wurth and incident to that employment relationship.

87.     The post-employment restrictive covenant contained within the Wurth Employment Agreement is reasonable in temporal and geographic scope.

88.     By the actions described above, Defendant Matlock breached and continues to breach the express terms of the Wurth Employment Agreement that he signed as a condition of his employment with Wurth.

89.     By such actions, Defendant Matlock has caused and continues to cause Wurth immediate and irreparable harm for which Wurth has no adequate remedy at law.

90.     Defendant Matlock will continue such wrongful conduct unless enjoined.

**WHEREFORE,** WURTH respectfully requests that this Court:

a)  Enjoin Defendant preliminarily during the pendency of this action and for twelve (12) months from the date of a final Order, from owning, managing, operating, controlling, being employed by, participating in or being connected in any manner with the ownership, management, operation or control of any competing automotive parts business, the key machine, or key blank business, the industrial fastener and industrial maintenance products business, or any branch thereof (including Winzer and its affiliates) within Defendant's assigned territories;

b)  Enjoin Defendant preliminarily during the pendency of this action and for twelve (12) months from the date of a final Order, from soliciting or performing services for, or attempting to solicit or perform services for, any customer of Wurth within his assigned territories at any time within the twelve (12) months preceding the date of Defendant's separation;

c)  Enjoin Defendant preliminarily during the pendency of this action and for twelve (12) months from the date of a final Order, from soliciting or inducing or attempting to solicit or induce employees of Wurth to terminate their employment with Wurth, or cause employees to take any actions that might deprive Wurth of any customer or of any present or prospective business opportunity at any time within the twelve (12) months preceding the date of Defendant's separation;

d)  Enjoin Defendant from otherwise violating his Wurth Employment Agreement;

e)  Award damages against Defendant Matlock in an amount to be proved at trial;

f)  Award Wurth its costs and interest; and

g)  Grant such other and further relief as this Court deems equitable, just, and appropriate.

## COUNT II — TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS ADVANTAGE

91.  Wurth incorporates herein by reference the allegations of the preceding paragraphs.

92.  Wurth had existing and prospective economic and contractual relationships with its customers and accounts.

93.  Defendant intended to harm Wurth by interfering with its existing and prospective economic and contractual relationships and preventing such relationships from continuing or occurring.

94.  Defendant engaged in this tortious conduct in the absence of privilege, justification or excuse.

95.  By tortiously interfering with Wurth's economic or contractual existing or prospective customers and accounts, Defendant has caused and will continue to cause Wurth actual, immediate and irreparable harm for which Wurth has no adequate remedy at law and on account of which it has suffered, and will continue to suffer, actual damages.

96.  By tortiously interfering with Wurth's existing or prospective economic and contractual relationships with its customers and accounts, Defendant has acted intentionally, willfully, maliciously and with reckless indifference to Wurth's rights.

97.  Defendant will continue such wrongful conduct unless enjoined.

**WHEREFORE,** WURTH respectfully requests that this Court:

a) Enjoin Defendant, preliminarily during the pendency of this action and permanently thereafter, from interfering improperly with Wurth's economic and contractual relationships;

b) Award damages against Defendant in an amount to be proved at trial;

c) Award punitive damages against Defendant;

d) Award Wurth its costs and interest; and

e) Grant such other and further relief as this Court deems equitable, just, and proper.

## COUNT III— UNJUST ENRICHMENT

98.    Wurth incorporates herein by reference the allegations of the preceding paragraphs.

99.    Wurth entered into a valid and enforceable Employment Agreement with Defendant in exchange for compensation, and reasonably expected Defendant to honor the Agreement terms and conditions.

100.    Defendant had notice and knowledge that Wurth expected Defendant to perform and honor his agreed-upon obligations under his Employment Agreement.

101.    Defendant was enriched by his unlawful behavior when he accepted employment by Winzer and received the associated compensation and benefits, and continue to get enriched, in violation of his post-employment restrictive covenant.

102.    The enrichment of Defendant was at the expense of Wurth, particularly because, Winzer obtained significant profits due to the unlawful solicitation of Wurth's current and former customers by Defendant and in turn compensated Defendant, and upon information and belief, continues to do same.

103.    It is against equity and good conscience to permit Defendant to retain the windfall associated with Wurth and receive compensation along with other benefits due to the successful unlawful solicitation of Wurth's customers for the benefit of themselves and Winzer.

104.    The benefits to Defendant, as described therein, were substantial and definitive.

105.    Wurth has been damaged as a direct and proximate result of Defendant's retention of benefits described herein.

106.    The retention of compensation and benefits by Defendant is unjust.

107.    Defendant will continue such wrongful conduct unless enjoined.

**WHEREFORE,** WURTH respectfully requests that this Court:

a)  Enjoin Defendant, preliminarily during the pendency of this action and permanently thereafter, from interfering improperly with Wurth's economic and contractual relationships;

b)  Award damages against Defendant in an amount to be proved at trial;

c)  Award punitive damages against Defendant;

d)  Award Wurth its costs and interest; and

e)  Grant such other and further relief as this Court deems equitable, just, and proper.

## COUNT IV— QUANTUM MERUIT

108.    Wurth incorporates herein by reference the allegations of the preceding paragraphs.

109.    Wurth contracted with Defendant to perform employment duties along with honoring post-termination employment duties in exchange for compensation, and reasonably expected performance and honoring of post-employment duties in return.

110.    Defendant impliedly and expressly promised to perform employment duties and to honor her post-employment duties to Wurth.

111.    Defendant has not fulfilled the agreed-upon post-employment duties pursuant to the agreed-upon obligations, all while retaining compensation and benefits from Wurth in addition to compensation and benefits from a prohibited direct competitor, Winzer.

112.    It would be unjust, unfair, and inequitable for Defendant to retain the benefit gained from his failure to fulfill and honor his agreed-upon obligations under the parties' Employment Agreement.

113.    Wurth has been damaged by Defendant's failure to fulfill and honor his post-employment obligations.

114.    Defendant will continue such wrongful conduct unless enjoined.

**WHEREFORE,** WURTH respectfully requests that this Court:

a) Enjoin Defendant, preliminarily during the pendency of this action and permanently thereafter, from interfering improperly with Wurth's economic and contractual relationships;

b) Award damages against Defendant in an amount to be proved at trial;

c) Award punitive damages against Defendant;

d) Award Wurth its costs and interest; and

e) Grant such other and further relief as this Court deems equitable, just, and proper.

## COUNT V — REQUEST FOR INJUNCTION

115.    Wurth incorporates herein by reference the allegations of the preceding paragraphs.

116.    Wurth's application for injunctive relief is authorized by Federal Rule of Civil Procedure 65.

117.    Defendant continues to work for a direct competitor, and continue to utilize Wurth's confidential and proprietary information and trade secrets to unlawfully solicit Wurth customers and sell to same.

118.    It is probable that Wurth will recover from Defendant after a trial on the merits because Defendant continues to work for a direct competitor and continue to utilize Wurth's confidential and proprietary information and trade secrets to unlawfully solicit Wurth customers and sell products to existing and former customers of Wurth and prospective customers.

119.    The harm that will result if the temporary injunction is not issued is irreparable because Defendant continues to work for a direct competitor and continue to use Wurth's confidential information and Wurth's trade secrets and continue to solicit and sell to Wurth's customers, which will cause irreparable and irreversible harm to the goodwill and reputation that Wurth has spent significant time and money establishing.

120.    Wurth has no adequate remedy at law because Defendant refuses to cease employment with Winzer, and cease utilizing Wurth's trade secrets, goodwill, and materials, and for monetary gain.

**WHEREFORE**, WURTH respectfully requests that the court grant it the following injunctive relief:

      a) Enjoin Defendant preliminarily during the pendency of this action and for twelve (12) months from the date of a final Order, from owning, managing, operating, controlling, being employed by, participating in or being connected in any manner with the ownership, management, operation or control of any competing automotive parts business, the key machine, or

key blank business, the industrial fastener and industrial maintenance products business, or any branch thereof (including Winzer and its affiliates) within the Defendant's assigned territories;

b)  Enjoin Defendant preliminarily during the pendency of this action and for twelve (12) months from the date of a final Order, from soliciting or performing services for, or attempting to solicit or perform services for, any customer of Wurth for which each of Defendant's assigned territories at any time within the twelve (12) months preceding the date of Defendant's separation;

c)  Enjoin Defendant preliminarily during the pendency of this action and for twelve (12) months from the date of a final Order, from soliciting or inducing or attempting to solicit or induce employees of Wurth to terminate their employment with Wurth, or cause employees to take any actions that might deprive Wurth of any customer or of any present or prospective business opportunity at any time within the twelve (12) months preceding the date of Defendant's separation;

d)  Enjoin Defendant, preliminarily during the pendency of this action and permanently thereafter, from interfering improperly with Wurth's economic and contractual relationships;

e)  Enjoin Defendant, including without limitation any persons acting by, through, and for them, and anyone to whom he has already divulged Wurth's trade secrets, confidential or proprietary information, preliminarily during the pendency of this action and permanently thereafter, from endeavoring to learn, learning, retaining, disclosing, or using in any way Wurth's trade secrets, confidential or proprietary information.

Dated: April 6, 2022.

Respectfully submitted,

/s/ Robert A. Bragalone
**ROBERT A. BRAGALONE**
State Bar No. 02855850
BBragalone@grsm.com
2200 Ross Avenue, Suite 3700
Dallas, TX 75201
(214) 231-4660 (Telephone)
(214) 461-4053 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| WURTH USA, INC., <br><br>                       Plaintiff, <br><br> v. <br><br> JAMES MATLOCK; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and DOE ENTITIES 1-10, <br><br>                     Defendants. | Case No.: |

## <u>VERIFICATION</u>

I, Aaron Brading, am the Chief Executive Officer ("CEO") of Wurth USA, Inc. ("Wurth"). I am authorized to make this Verification for and on behalf of Wurth.

I have read the foregoing Verified Complaint; the facts and matters set forth therein have been assembled from records of Wurth and were prepared with assistance of employees and representatives of Wurth, upon which I have relied in making this Verification. Based upon the matters which have been made known to me for purposes of making this Verification, I state that I am informed and believe that the matters stated in Wurth's complaint are true and correct. The grounds of my knowledge, information, and belief are derived from my position as CEO at Wurth, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Wurth's records and conversations with Wurth employees, and Wurth representatives' conversations with Defendant.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: March 25, 2022.